THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WINSTON LEE BAZEMORE, Plaintiff in Error.

*Opinion filed May 25, 1962.*

COGHLAN, COGHLAN AND JOYCE, of Chicago, (JOHN P. COGHLAN, SR., and JOHN P. COGHLAN, JR., of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Winston Lee Bazemore, was found guilty of the unlawful sale of narcotic drugs after a bench trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of ten to twelve years. He prosecutes this writ of error for review, contending he was not proved guilty beyond a reasonable doubt. The real issue presented is whether the testimony of a narcotics ad-

dict, uncorroborated by other evidence, facts or circumstances in the case, is sufficient to convict.

The principal witness for the prosecution was John Lenier, alias John Lewis, an informer who had been assisting the police in narcotics matters for about nine months prior to defendant's arrest. This witness, who stated he had known defendant two or three years, testified that for several days prior to August 10, 1960, he had seen defendant in the vicinity of a pool hall and had observed as defendant had made sales on the street of what the witness assumed to be narcotics. He reported the matter to police officer Clemie Paschal and, on the night of August 10, met Paschal and other officers on a street corner near the pool hall. At that time the officers searched him, found that he had no narcotics on his person and gave him $10 in currency after recording the serial numbers. Unaccompanied by the officers, who remained in a police car about a block away, Lenier walked to the vicinity of the pool hall and later returned with two tinfoil packets which were found to contain a derivative of opium. At the trial, Lenier testified he had purchased the packets from defendant with the money furnished by the police.

After receiving a description of the seller and information as to where the sale had taken place, the police made a search of the area but found no trace of defendant. According to Lenier, he next saw defendant two months later in the same vicinity and reported to Paschal whom he found seated in a police vehicle a short distance away. Defendant was apprehended at this time. No narcotics were found on his person, nor was any of the inventoried money ever recovered.

When cross-examined, Lenier related that he had been unemployed since February, 1960, and that from such time until the date of defendant's arrest, being motivated by a desire to help clean up the narcotics traffic, he had assisted the police in making five arrests by acting as an informer,

He said he received no compensation for the work, but did it as a civic duty. Further, he testified that he had been a narcotics addict for about two years, requiring two "shots" a day, and that he had purchased narcotics for his own use from defendant in January, 1960. Immediately thereafter, however, he stated that he had never been completely addicted but was a "joypopper," meaning he was one who took narcotics only for an occasional lift. In one instance he · testified he had not used narcotics for three and one-half months, but on another stated he had his last shot two months before the trial.

Concerning the alleged purchase from defendant on August 10, Lenier testified there were several persons standing around who saw what happened, but that he had never informed the police there were witnesses to his transaction with defendant.

Officer Paschal's testimony, insofar as material to the issue on appeal, was that he knew Lenier was an addict, but had never arrested him, and that he had loaned Lenier money which had never been paid back. As to the events of August 10, the officer conceded the informer had not been kept under surveillance and that he, the officer, did not in fact know if the narcotics had been purchased from defendant.

Testifying in his own behalf, defendant stated he had never sold or possessed narcotics; that he did not know Lenier personally; that he had not seen the informer on the night of August 10; that he resided at 448 E. 48th Street on such date and had continued to reside there until arrested; and that he had not gone into hiding at any time or sought to conceal his whereabouts. In the latter regard, Lenier testified that he had known where defendant resided.

Where, as here, the State's case rests solely upon the credibility of an admitted narcotics addict, a trial court, and in the final analysis this court, must carefully and closely scrutinize the testimony of the witness. (*People v. Boyd,*

17 Ill.2d 321; *People* v. *Hamby*, 6 Ill.2d 559.) Although it does not necessarily follow that his testimony must be disbelieved, (*People* v. *Barney*, 15 Ill.2d 503,) the fact that a witness is a narcotics addict has an important bearing on his credibility. (*People* v. *Crump*, 5 Ill.2d 251.) Nor, as the People assert, is credibility affected only when it is shown that the witness was under the influence of narcotics at the time of the occurrence to which he testifies, or at the time of trial. For in addition to the effect addiction may have on capacity of the witness to observe, to receive accurate impressions and to retain them in his memory, the courts may consider, too, the effect of addiction upon the power and the inclination of the witness to be truthful. (*People* v. *Boyd*, 17 Ill.2d 321.) A further circumstance in this case, which goes to the credibility of the witness, is the fact that the informer was not kept under any surveillance by the police as he went about making the controlled purchases of drugs. *People* v. *Villalobos*, 20 Ill.2d 315, 318.

The credibility of witnesses and the weight to be afforded their testimony are essentially matters to be determined by the court or jury, as the case may be. And while we are loathe to disturb their findings in such matters, we cannot say after a searching analysis of the record that the entirely uncorroborated testimony of Lenier is so clear, satisfactory and convincing as to remove all reasonable doubt of defendant's guilt. This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one.

At the time of the alleged sale on August 10, 1960, and for approximately two years prior thereto, Lenier was admittedly an addict taking two "shots" a day. He was thus subject to the moral depravity commonly associated with

narcotics addiction. Though unemployed during the period he worked with the police, Lenier still had his own habit to satisfy and, in looking to his motives for acting as an informer, we cannot help but take particular cognizance that he was being "loaned" money by one of the officers. Considering the evil of narcotics traffic and the stealth with which it is conducted, we do not condemn this action of the officer aimed at apprehending the most despicable of criminals, the narcotics suppliers. But, at the same time, we must consider that the informer would doubtless go to extremes to curry police favor and "loans," and the possibility that, being completely without surveillance, he would act under the compulsion of producing a victim in order to perpetuate the status he had enjoyed for nine months.

Moreover, there are two other instances in the record which, in our opinion, cast doubt upon the reliability of the witness. First, he testified categorically that he had seen defendant making sales of narcotics on the street immediately prior to August 10, but, when cross-examined, he conceded it was only a presumption on his part. Next, he disclosed for the first time during the trial that there had been witnesses to his alleged transaction with defendant, a disclosure that most certainly would have been made to the police had he been completely co-operative and candid with them.

Ordinarily we attach great weight to the determination of the trial court. Here, however, the testimony of the informer, uncorroborated by any evidence, fact or circumstance in the record, leaves such reasonable doubt as to the guilt of the accused that it becomes our duty to set the conviction aside. Accordingly, the judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*