THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL CORTEZ, Defendant-Appellant.

Second District    No. 2—04—0935

Opinion filed October 14, 2005.

Donald J. Ramsell, Steven D. Armamentos, Christopher B. Klis, and James P. Steed, all of Ramsell, Armamentos & Klis, L.L.C., of Wheaton, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Mary Ellen Dienes, of Des Plaines, for the People.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Paul Cortez, appeals his conviction, after a bench trial, of one count of driving a vehicle with a blood-alcohol concentration of 0.08 or greater (625 ILCS 5/11—501(a)(1) (West 2002)). On appeal, defendant argues that the trial court erred in (1) denying his motion to quash arrest; (2) allowing the State to introduce undisclosed opinion testimony; (3) allowing the State to introduce the result of a blood test; (4) accepting expert testimony converting defendant's serum blood test results to a whole blood equivalent; and (5) finding him to be proven guilty beyond a reasonable doubt. In his reply brief, defendant also argues that the blood test used against him was improperly admitted because it did not comply with section 11—501.2 of the Illinois Vehicle Code (625 ILCS 5/11—501.2 (West 2002)). We affirm.

On April 24, 2003, at approximately 4 p.m., defendant lost control of his black sport utility vehicle as he drove down an interstate entrance ramp. After defendant lost control, the car apparently rolled over before coming to rest in a ditch next to the interstate. State Trooper Robert Patterson arrived at the scene of the accident, summoned an ambulance, and briefly questioned defendant regarding the incident. Defendant rode in the ambulance to the hospital, where he received medical treatment from Dr. Brian Kern. Shortly after defendant arrived at the hospital, Patterson arrested him for driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2002)). Based on defendant's blood test, he was also charged with operating a motor vehicle with a blood-alcohol concentration of 0.08 or greater (625 ILCS 5/11—501(a)(1) (West 2002)).

Before his trial began, defendant filed a motion to quash his arrest on the ground that Patterson lacked probable cause to arrest him. The trial court held a hearing on defendant's motion on March 15, 2004.

Trooper Patterson was the only witness to testify at the hearing. He testified that he was dispatched to the scene of defendant's accident at approximately 4 p.m. on April 24, 2003. Upon his arrival, Patterson noticed two sets of skid marks on the interstate entrance ramp, and he saw a black sport utility vehicle lying on its driver's side in the ditch approximately 25 to 50 feet from the interstate. He testified that only the driver's side of the car showed any damage. At that time, Patterson approached defendant, who was standing next to his vehicle in the ditch, and asked if he needed medical attention. Defendant informed Patterson that his back and neck were injured and that he needed an ambulance. Patterson testified that defendant had bloodshot eyes, that there was a strong odor of alcohol on

defendant's breath, that defendant was swaying forward and backward as the two talked, and that defendant slurred his speech. Defendant also admitted to having consumed "a couple beers." Patterson stated that he did not ask defendant to perform any field sobriety tests "due to [defendant's] injury."

Defendant claimed to Patterson that the accident was the result of a vehicle, which defendant could not describe, running him off the entrance ramp. Patterson noted that the entrance ramp was only one car lane wide and that, if two cars were to drive on the ramp side-by-side, one would have to drive in the gravel alongside the paved portion of the ramp. Patterson stated that he found no tire tracks in the gravel next to the ramp on the day of the accident. He described the traffic as "light" at the time that he arrived at the scene. Patterson described the skid marks on the ramp as follows:

"Okay the skid marks there was [sic] basically two sets. First set was approximately 50, 75 foot [sic] after the entrance into the ramp and the way the marks [sic] skid marks, it went to the right like going to the right ditch. That's the way the curve of the ramp was heading. It *** kind of straightened back out. It looked to me that the vehicle wasn't straightened out, so in that time I believe that he was braking, tried to avoid that ditch, over correct it to the left which in that time period there was a brief, there's [sic] no skid marks. Once the vehicle went back corrected to the left heading toward the left ditch there was [sic] more skid marks and directly after the skid marks went down into the ditch."

Patterson concluded that the vehicle had not rolled over completely but merely "went from the wheels to the driver's side."

Patterson admitted that, in front of the grand jury, he had testified that defendant told him that defendant did not need an ambulance at the scene of the accident. Patterson also admitted that his police report listed the time of defendant's arrest as 4:12 p.m., when, in fact, the arrest occurred in the hospital sometime after 4:12, which was actually the time Patterson arrived at the scene of the accident.

In its ruling on the motion to quash, the trial court summarized Patterson's testimony, including the indicia of intoxication Patterson had mentioned. It also noted the discrepancy between Patterson's grand jury testimony and his hearing testimony, but it concluded that "[i]t's pretty clear that [defendant] did in fact ask for an ambulance." The court also noted that Patterson's testimony "[that] the traffic was light certainly doesn't make a lot of sense to the court," based on the time of day and location of the accident. However, the court concluded that it did not "find [Patterson's] testimony to have been so impeached that it's unbelievable as to these other things that he has indicated for

the court." The court then denied defendant's motion to quash his arrest.

Before the start of defendant's bench trial, defendant made several motions *in limine*, including a motion to prohibit introduction of any undisclosed statements by defendant, a motion to prohibit the State's calling undisclosed witnesses, a motion to prohibit the introduction of any opinion evidence not previously disclosed, a motion to exclude "any foundation evidence for opinions that have not yet been previously disclosed," and a motion to exclude "any evidence from a non-testifying witness." The court granted all but the latter two motions, on which it reserved ruling.

Defendant's bench trial took place on June 10 and 11, 2004. Paramedic Terence Reilly was the first witness to testify. He testified that he was dispatched to the location of a rollover accident at approximately 4 p.m. on April 24, 2003, and, upon his arrival at the scene, Patterson directed him to defendant. Reilly stated that defendant's car had rolled over 1½ times but that defendant had not lost consciousness and had sustained only minor injuries. He also reported that the roof of the car was "smashed down approximately six inches" and that the car's windshield was shattered. Reilly testified that he transported defendant to the emergency room via ambulance and that he administered 200 cubic centimeters of saline solution intravenously to defendant after swabbing defendant's left arm with rubbing alcohol in order to forestall infection. Reilly described the application of rubbing alcohol as follows:

> "Clean the site with rubbing alcohol, place the tourniquet above the site to allow the vein to swell. Dry the remainder of the rubbing alcohol off, insert the needle into the patient's arm, slide the catheter in."

While being transported to the hospital, defendant admitted to Reilly that he had consumed a few beers before the accident. However, Reilly did not note on his report that defendant was intoxicated, and he found defendant's reactions, motor skills, and pupil dilation to be normal.

The State next called Dr. Kern to testify. He testified that he provided medical treatment to defendant at approximately 5 p.m. on April 24. Kern stated that he ordered various tests for defendant, including a test to determine the level of alcohol in defendant's blood. He testified that such blood tests are normally sent to a lab for processing and that he normally relies on the results of the tests in treating patients.

In the middle of Kern's testimony, the parties held a conference outside the presence of the witness. During the conference, the defense

argued that, because Kern was not disclosed as an expert witness pursuant to Supreme Court Rule 412 (188 Ill. 2d R. 412), Kern should not be allowed to testify to his opinion that defendant was intoxicated or to his opinion that the intravenous fluid application did not alter defendant's blood test results. The trial court took a break before ruling as follows:

"Maybe it's a matter of semantics, and I don't know. But this Doctor can testify clearly as a treating physician that certain tests were ordered. Apparently he has already testified that he ordered certain blood screens, including a blood alcohol concentration screen.

*** He can testify that he relied on these results as accurate, even though there was an IV used or alcohol swabs potentially used ***."

Kern returned to the stand and stated that the results of defendant's blood test indicated that he had an ethanol level of 152 milligrams per deciliter of blood serum. The following colloquy ensued:

"Q. You relied upon that ethanol level [in treating defendant]. Did you also consider that saline solution was given to [defendant]?

\* \* \*

THE WITNESS: Yes.

\* \* \*

Q. Was your reliance upon the ethanol level [from the test results] affected by the saline solution that was given to [defendant]?

A. My reliance on the level was not affected by the saline solution given to [defendant].

\* \* \*

Q. Why was your reliance on the ethanol level contained in [the test results] not affected by the saline solution given to [defendant]?

A. I don't believe that the saline solution that was given to [defendant] made a significant change to the alcohol level that I was presented with.

\* \* \*

Q. Do you know whether in administering saline to [defendant] whether an alcohol swab was used or not?

A. Typical course of events is when we start an IV or a paramedic start [sic] an IV to disinfect the skin or to prevent—to try and minimize the chance of infection, we use a swab of isopropyl alcohol to treat the skin before the institution of an IV.

\* \* \*

Q. Was your reliance upon the ethanol level contained in [the test results] affected by the administration of rubbing alcohol prior to the IV being administered to [defendant]?

[The trial court overrules the defense's objection.]

A. The use of the isopropyl alcohol swab to start the IV did not change my reliance on the ethanol level.

Q. And why did it not change your reliance upon the ethanol level?

[DEFENSE COUNSEL]: Objection, opinion not disclosed.

THE COURT: Overruled.

[DEFENSE COUNSEL]: I ask for a mistrial, leave to reinstate my jury demand.

THE COURT: Motion is denied.

[The witness] can answer the question.

A. Because I don't think that using an isopropyl alcohol swab on the skin to start an IV significantly affects the ethanol level that was drawn at a later time."

At the close of the State's direct examination of Kern, defense counsel stated:

"Could the record reflect I lack any capability of cross-examining on the effects of isopropanol and blood draw because I didn't prepare for that, just so the record is clear, Judge."

On cross-examination, Kern stated that he did not diagnose defendant with intoxication or notice any signs of intoxication, such as altered mental status, lack of alertness, delayed pupil reaction, and diminished physical coordination.

The State next called Dr. Karl Larsen to testify as an expert in the areas of toxicology and drug chemistry. He described blood serum as the liquid part of human blood, excluding the solid hematocrit, which is comprised mostly of red blood cells, white blood cells, and platelets. Larsen testified that reducing whole blood to serum reduces the volume of a sample and thus increases the alcohol concentration of the sample. He stated that the blood serum concentration number must be converted in order to determine a subject's blood-alcohol level and that, based on a conversion factor of 1.18, defendant's whole blood alcohol at the time of his blood test was 0.128 (0.128 grams of alcohol per deciliter of whole blood). Larsen testified that his use of 1.18 as the conversion factor was based on scientific studies that had been done, and he noted that the Illinois State Police had adopted the same conversion factor. He also testified that the 1.18 conversion factor had been generally accepted in the scientific community. On cross-examination, Larsen admitted that there is no universally agreed-upon conversion factor, and, on redirect examination, he stated that the acceptable range of conversion factors is "all the way down to 1.10 and up to 1.20." He also noted that, if he had applied the 1.20 conversion factor, the factor most favorable to defendant within the acceptable range, defendant's blood-alcohol level would have been calculated as 0.126.

The State's final witness was Patterson, whose testimony largely reproduced the testimony he had already offered during the hearing on defendant's motion to quash. As defendant points out on appeal, the lone discrepancy between Patterson's testimony at the motion hearing and at trial was that, during trial, Patterson insisted that he asked defendant to undergo field sobriety testing and defendant refused. The defense rested its case without calling any witnesses to testify.

The trial court found the evidence insufficient to convict defendant of driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2002)), but, relying on defendant's blood test results, it found him guilty of driving a vehicle with a blood-alcohol concentration of 0.08 or greater (625 ILCS 5/11—501(a)(1) (West 2002)). Defendant timely appeals.

Defendant's first argument on appeal is that Patterson lacked probable cause to arrest him and the trial court erred in denying his motion to quash arrest. We accord great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence; however, we will review *de novo* the ultimate question of defendant's legal challenge to the denial of his motion to quash. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001) (bifurcated standard of review for motion to suppress).

■ Defendant begins his challenge to the trial court's denial of his motion to quash by noting discrepancies in Patterson's testimony, such as the incorrect arrest time on Patterson's police report, Patterson's inconsistent testimony concerning whether defendant requested an ambulance, Patterson's failure to note that defendant's front windshield had shattered, the inconsistencies in Patterson's testimony regarding whether he asked defendant to take a field sobriety test, and Patterson's conclusion that defendant's car rolled over only half a time instead of the 1½ times the damage to the car seemed to indicate. Thus, defendant apparently offers the inconsistencies in Patterson's testimony only to impeach Patterson's general credibility as a witness to this event. We accord great deference to a trial court's factual determinations, because a trial court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). Defendant cannot point to any inconsistencies in Patterson's testimony regarding the odor of alcohol on defendant's breath or defendant's slurred speech, swaying, bloodshot eyes, and admission to drinking before driving. As noted above, the trial court found that, despite its inconsistencies, Patterson's testimony was not "so impeached that [it was] unbelievable as

to these other things that he has indicated for the court." Especially in light of the fact that Patterson was the only witness to testify at the hearing on the motion to quash, we do not hold the trial court's findings of fact based on his testimony to be against the manifest weight of the evidence.

■ Defendant also argues that the facts as the trial court found them did not, as a matter of law, give rise to probable cause to arrest defendant for driving under the influence of alcohol. He argues that Patterson never testified that defendant stumbled or failed to properly respond to questioning, and he notes that there were no witnesses to the incident to discredit defendant's claim that another car forced him off the road. We first observe that, aside from the indicia of intoxication mentioned above, Patterson also testified that he examined the accident site and concluded, based on the skid marks and lack of tire prints in the gravel, that defendant had not been forced off the road by a second vehicle.

Regardless of that observation, the facts known to Patterson at the time he arrested defendant gave rise to probable cause to support the arrest. Probable cause exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the person arrested has committed a crime. *People v. Sims*, 192 Ill. 2d 592, 614 (2000). The existence of probable cause to arrest depends upon the totality of the circumstances at the time of the arrest. *Sims*, 192 Ill. 2d at 615. As stated, though our review of the ultimate legal question of probable cause is *de novo*, the trial court's findings of fact receive great deference and will be reversed only if they are against the manifest weight of the evidence. *Sorenson*, 196 Ill. 2d at 430-31.

Here, defendant, who had rolled his car over, exhibited bloodshot eyes and slurred speech, smelled of alcohol, swayed as he spoke, and admitted to having consumed beer before driving. Based on those observations, a reasonably cautious person would have been led to believe that defendant had driven while under the influence of alcohol.

Defendant relies on this court's decision in *People v. Boomer*, 325 Ill. App. 3d 206 (2001), in urging a different result. In *Boomer*, an officer dispatched to an accident scene found the defendant lying in a ditch approximately 15 feet from his motorcycle. *Boomer*, 325 Ill. App. 3d at 207-08. The defendant smelled of alcohol, and he admitted to having consumed alcohol before driving his motorcycle. *Boomer*, 325 Ill. App. 3d at 208. On appeal, the appellate court affirmed the trial court's determination that the officer lacked probable cause to arrest the defendant based on those circumstances. *Boomer*, 325 Ill. App. 3d at 209-11.

However, in holding that the facts there did not give rise to probable cause to arrest, the court in *Boomer* distinguished its case from *People v. Brodeur*, 189 Ill. App. 3d 936 (1989), and *People v. Wingren*, 167 Ill. App. 3d 313 (1988), in which probable cause to arrest did exist, on the ground that the defendants in those cases exhibited bloodshot eyes and slurred speech in addition to emitting an odor of alcohol. Here, defendant presented with bloodshot eyes and slurred speech, among the other indicia noted above. Therefore, the circumstances in the current case are precisely those that the court in *Boomer* acknowledged could give rise to probable cause, and defendant's reliance on *Boomer* is misplaced. The trial court did not err in ruling that Patterson had probable cause to arrest defendant.

■ Defendant's second argument on appeal is that the trial court erred in allowing Kern, who was not disclosed as an expert witness pursuant to Supreme Court Rule 412, to testify as to the effect on defendant's blood test results of the administration of saline solution to defendant. Defendant further argues that, because the State is required to prove that the alcohol swab and intravenous fluid treatment did not compromise the results of defendant's blood-alcohol test, the admission of Kern's testimony cannot be considered harmless. See *People v. Miller*, 166 Ill. App. 3d 155, 158 (1988) (State bears the burden of proving that medication or intravenous fluids did not interfere with a blood-alcohol test).

The relevant portion of Kern's testimony is excerpted above. In arguing that Kern's testimony was undisclosed expert testimony, defendant directs us to the Black's Law Dictionary definition of "opinion evidence or testimony." Opinion testimony is "[t]estimony based on one's belief or idea rather than on direct knowledge of the facts at issue." Black's Law Dictionary 1486 (7th ed. 1999). Defendant thus urges that we apply a rigid definition of expert testimony in this case to hold that Kern's testimony was an opinion based on his medical knowledge. However, we agree with the trial court that defendant's argument is largely a matter of semantics.

In the context of determining whether a treating physician should be considered an expert under the then-existing version of Supreme Court Rule 220 (107 Ill. 2d R. 220), the supreme court has stated as follows:

"Treating physicians *** typically are not 'retained to render an opinion at trial' [under the language of the rule] but are consulted, whether or not litigation is pending or contemplated, to treat a patient's physical or mental problem. While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any

litigation. Such an opinion is not formed in anticipation of a trial, but is simply the product of a physician's observations while treating the patient, which coincidentally may have value as evidence at a trial. In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226, 234-35 (1988).

Of course, we agree with the supreme court's reasoning, and we believe that defendant's position would effectively preclude any treating physician from testifying as anything but an expert. Kern testified that the use of the alcohol swab and the intravenous fluids did not affect his reliance on the blood tests during his treatment of defendant. While Kern technically conveyed an opinion, he conveyed an opinion that was simply the product of his observations while treating defendant. We agree with the trial court that this testimony need not have been disclosed as expert testimony, and we reject defendant's argument. See also *People v. Menssen*, 263 Ill. App. 3d 946, 953-54 (1994) (without addressing expert testimony issue, accepting treating doctor's testimony that intravenous fluids would not affect a blood test result).

We further note that, even if there had been a violation of the discovery rules here, defendant would not have been entitled to a new trial. While compliance with the discovery requirements is mandatory, the failure to comply with these requirements does not require a reversal absent a showing of surprise or undue prejudice. *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). The burden of showing surprise or prejudice is upon the defendant, and the failure to request a continuance is a relevant factor to consider in determining whether the new testimony actually surprised or unduly prejudiced the defendant. *Robinson*, 157 Ill. 2d at 78. "A defendant cannot request only the most drastic measures, such as either an immediate mistrial or the total exclusion of testimony by a witness, and then on appeal argue that he is entitled to a new trial when these requests are not granted." *Robinson*, 157 Ill. 2d at 78-79; see also *People v. Foster*, 76 Ill. 2d 365, 384 (1979) ("[if an undisclosed] statement was so earthshaking as to require complete reorganization of the defendant's case, counsel should have asked for a continuance or recess for that purpose ***. His failure to do so is persuasive evidence that the prejudice here alleged was in fact trivial"). Here, defendant stated on the record that he was surprised by the State's questioning of Kern, but he did not

request a continuance to prepare for any unexpected testimony. Instead, he moved immediately for a mistrial and a revocation of his jury waiver.

Further, the State notes that defendant's claim of surprise is dubious in light of the fact that defendant preemptively objected to Kern's testimony during a sidebar, before the State's questioning regarding the administration of intravenous fluids. During that sidebar, defendant even noted that, under *Miller*, the State had to introduce evidence that the intravenous fluid and alcohol swab did not affect defendant's blood test results. The State also points out that defendant made several general motions *in limine* before the start of trial but never specifically mentioned the testimony he now challenges, despite the fact that he intended all along to rely in some manner on the application of the alcohol swabs in making his case.

█ In his reply brief, defendant cites a set of national blood-alcohol testing guidelines that he claims he would have used to impeach Kern's testimony finding no problem with the use of an alcohol swab to clean the skin where the intravenous fluids were administered. However, the guidelines defendant cites merely state that blood should not be removed while intravenous fluids are being administered and that alcohol-containing sponges should not be used to cover a puncture site at the time a needle is withdrawn. Neither of these actions is alleged to have happened here; all the testimony indicated that the alcohol swab was applied and removed before the fluids were administered, and there is no evidence (or allegation) that the blood test occurred while the fluids were being administered. Further, defendant cites these standards for the first time in his reply brief on appeal in an attempt to vacate his conviction, and he failed to present them to the trial court with his motion to reconsider. The State has filed a motion to strike defendant's reference to these guidelines on the ground that defendant improperly presents them for the first time in his reply brief on appeal, and we grant that motion. We also find defendant's argument to be without merit.

█ Defendant's third argument on appeal is that the trial court erred in allowing the State to introduce the results of the hospital blood test. The State admitted the blood test evidence pursuant to section 11—501.4—1(a) of the Vehicle Code (625 ILCS 5/11—501.4—1(a) (West 2004)), which provides as follows:

"Notwithstanding any other provision of law, the results of blood or urine tests performed for the purpose of determining the content of alcohol *** in an individual's blood or urine conducted upon persons receiving medical treatment in a hospital emergency room for injuries resulting from a motor vehicle accident shall be

disclosed to the Department of State Police or local law enforcement agencies of jurisdiction, upon request. Such blood or urine tests are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code ***."

Defendant claims that the statute violates his constitutional right to confrontation because it denies him the opportunity to cross-examine the doctor responsible for his blood test. Indeed, hearsay must fall within a firmly rooted exception or exhibit particularized guarantees of trustworthiness before it may be admitted without violating the right to confront. *People v. McClanahan*, 191 Ill. 2d 127, 132 (2000), citing *Ohio v. Roberts*, 448 U.S. 56, 65-66, 65 L. Ed. 2d 597, 607-08, 100 S. Ct. 2531, 2538-39 (1980). In *McClanahan*, upon which defendant relies, the supreme court held that a statute, which provided for the admission of lab reports into evidence, was unconstitutional where the reports were insufficiently reliable to warrant an exception to the hearsay rule and did not fall within a firmly rooted hearsay exception. *McClanahan*, 191 Ill. 2d at 132-39. However, in *People v. Lendabarker*, 215 Ill. App. 3d 540 (1991), the appellate court held that section 11—501.4 of the Vehicle Code does not violate the confrontation clause, because the section is sufficiently similar to the business records exception to the hearsay rule to be itself considered a firmly rooted exception to the hearsay rule. *Lendabarker*, 215 Ill. App. 3d at 557-60. We agree, and we reject defendant's argument.

■ Defendant's fourth argument on appeal is that the trial court erred in allowing Larsen to convert the results of defendant's serum blood test to a whole blood equivalent. The admission of expert testimony is a matter within the discretion of the trial court, and its decision in that regard will not be disturbed absent an abuse of discretion. *People v. Thill*, 297 Ill. App. 3d 7, 11 (1998). In pressing his argument, defendant relies principally on *Thill*, in which the court stated that "[e]xpert opinion that is based upon unreliable data and procedures is inadmissible" and that the "trial court has a responsibility to determine whether the underlying facts or data upon which an expert bases an opinion are of a type reasonably relied upon by experts in the particular field." *Thill*, 297 Ill. App. 3d at 11. However, Larsen testified that the conversion factor he used was generally accepted in the relevant scientific community.

On cross-examination, defendant questioned Larsen's dependence on a 1.18 conversion factor, and he pointed out relevant scientific writings that relied on various factors. However, Larsen responded that conversion factors ranging from 1.10 to 1.20 were generally accepted. Thus, the 1.18 conversion factor Larsen employed is generally ac-

cepted in the relevant scientific community, and Larsen's testimony was properly admitted. We also note that, to the extent defendant takes issue with Larsen's choosing 1.18 from the possible range of conversion factors, Larsen testified that, even if he had used the conversion factor most favorable to defendant (1.20), defendant's blood-alcohol level would still have measured over the statutory limit.

Defendant further argues that the blood draw here was not at the request of a law enforcement officer and thus Larsen's use of the conversion factor used by the Illinois State Police was improper. However, as the State points out, "the propriety of using 1.18 as the conversion factor depends on its accuracy and reliability in converting a serum blood reading to a whole blood equivalent, and not on who requests the blood sample." Larsen did not rely on the 1.18 conversion factor pursuant to statute. He relied on it based on his scientific judgment, and he noted that it was the same factor employed by the Illinois State Police. Defendant's argument is without merit.

■ Defendant's fifth argument on appeal is that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt. When presented with a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. Defendant notes that neither the paramedic nor Kern diagnosed defendant as intoxicated, but the trial court nonetheless could have relied on Patterson's testimony, the paramedic's testimony concerning defendant's admission to drinking, and the blood test results that indicated that defendant's blood-alcohol level exceeded the statutory limit. The trial court had ample evidence upon which to base its judgment.

■ In his reply brief, defendant argues for the first time that his blood test results should have been inadmissible because the testing procedure did not comply with the Department of State Police regulations for blood testing, as required by section 11—501.2(a)(1) of the Vehicle Code (625 ILCS 5/11—501.2(a)(1) (West 2002)). Defendant argues that the requirements of section 11—501.2(a)(1) apply here pursuant to the language of the section of the Vehicle Code defendant was convicted of violating:

> "[Driving under the influence occurs when] the alcohol concentration in the person's blood or breath is 0.08 or more based on the definition of blood and breath units in Section 11—501.2[.]" 625 ILCS 5/11—501(a)(1) (West 2002).

The State has filed a motion to strike this argument because it was raised for the first time in defendant's reply brief. Defendant claims to have raised the argument in his initial brief, and he provides us a specific page at which the argument was purportedly brought. However, the page defendant references contains argument that is in no way related to the new argument he raises in his reply brief. Instead, that portion of defendant's brief contains only defendant's argument, rejected above, that the use of a 1.18 conversion factor was improper because the blood was not drawn pursuant to an order from a law enforcement officer, along with a recapitulation of defendant's argument that the alcohol swab may have affected the test results. These arguments, along with a passing citation of section 11—501.2 in a completely different context, did not give, as defendant claims, "ample notice [to the State] of this argument."

It is improper to raise a new argument in a reply brief, and such argument will be deemed waived. 210 Ill. 2d R. 341(h)(7). ("Points not argued are waived and shall not be raised in the reply brief ***"). We therefore grant the State's motion to strike the portion of defendant's reply brief that raises new argument.

For the reasons given, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER and BYRNE, JJ., concur.