NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230440-U

NO. 4-23-0440

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 27, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Cass County |
| TROY TAYLOR, | ) | No. 23CF4 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark Vincent, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held:* The appellate court affirmed defendant's convictions because (1) the evidence was sufficient to support his conviction for methamphetamine delivery and (2) the trial court did not err by failing to order the State to disclose the identity of the confidential informant more than 30 days before trial.

¶ 2    In January 2023, the State charged defendant, Troy Taylor, with delivering methamphetamine in December 2022 (720 ILCS 646/55(a)(1) (West 2022)) and possessing methamphetamine in January 2023 (*id.* § 60(a), (b)(1)). In April 2023, a jury found defendant guilty of both offenses. In May 2023, the trial court sentenced defendant to concurrent terms of seven and five years in prison.

¶ 3    Defendant appeals, arguing that (1) the State did not prove him guilty beyond a reasonable doubt because the only testimony that he sold methamphetamine came from a drug addict and (2) the trial court erred by not requiring the disclosure of the identity of the confidential informant more than 30 days prior to trial.

¶ 4        We disagree and affirm.

¶ 5                    I. BACKGROUND

¶ 6                A. The Charges and Pretrial Proceedings

¶ 7        On January 23, 2023, the State charged defendant with methamphetamine delivery (*id.* § 55(a)(1)) and methamphetamine possession (*id.* § 60(a), (b)(1)). The State alleged that in December 2022, defendant delivered less than five grams of methamphetamine to a confidential source (count I) and in January 2023, defendant possessed less than five grams of methamphetamine (count II).

¶ 8        That same day, the trial court conducted a preliminary hearing, found probable cause, and stated, "I am setting the hard discovery deadline on this March 3 by the end of business and the confidential source must be disclosed by the end of business on that day." The court also entered an "Appearance Order," directing, among other things, "State to provide discovery by 3/3/23 end of business including CS." The court set the case for "arraignment/status" on March 6, 2023.

¶ 9        On March 1, 2023, the State filed a "First Motion *In Limine*," asking the trial court to reconsider its January 23, 2023, order to disclose the identity of the confidential source by March 3, 2023. The State requested that the court permit the State to disclose the informant "closer in proximity to the actual trial date." Citing Illinois Supreme Court Rule 412(j)(ii) (eff. Mar. 1, 2001), the State argued that, because Cass County was a small community, "disclosing an informant months before a potential jury trial puts great risk on the informant's safety."

¶ 10       On March 17, 2023, defendant filed a motion to dismiss the State's "First Motion *In Limine*," asserting that it was, in essence, an untimely motion to reconsider because it was filed more than 30 days after the entry of the trial court's order. Defendant also filed a "Motion to

Exclude Evidence," in which he (1) argued that the State willfully failed to comply with the court's March 3, 2023, discovery deadline and (2) asked the court to "exclude any evidence not previously disclosed, including the name of the confidential source and any testimony that may therefrom be given."

¶ 11          On March 20, 2023, the trial court conducted a hearing on the State's motion. In support of the State's motion, the prosecutor said that "[t]he motion mirrors one earlier that Your Honor heard." Defense counsel argued only that she "believe[d] the motion was not timely filed. It was filed 38 days after entry of Your Honor's order."

¶ 12          The trial court ruled as follows:

          "Okay. For the reasons I just previously gave on the record in the co-defendant's [case], the court weighs the necessity *** to protect [the] confidential source. But, I also weigh the due process rights of the defendant, and most importantly, his constitutional right to face his accuser. [(We note that the record on appeal does not contain a transcript of the court's ruling in the codefendant's case.)]

          Based on that, and based on my conversations with other judges in the Eighth Judicial Circuit, I am setting policy that all confidential sources need to be disclosed within 30 days of trial. We are within 30 days of trial, as of today, if we proceed on the April jury docket.

          So, therefore, I'm giving the State 24 hours to disclose the confidential source. The Defendant's Motion to Dismiss is denied at this time, as long as [the State] provide[s] [the] confidential source within 24 hours. If not, then, [defense counsel], you can re-bring your Motion to Dismiss."

¶ 13        The trial court set defendant's case for jury trial on April 17, 2023.

¶ 14        The following day, on March 21, 2023, the State disclosed the identity of the confidential source.

¶ 15                          B. The Jury Trial and Sentence

¶ 16        On April 17, 2023, the trial court conducted defendant's jury trial.

¶ 17        Deputy Kyle Dodson of the Cass County Sheriff's Office testified that in December 2022, Nicholas Williams, who was "working off charges for the [sheriff's office]," agreed to serve as a confidential informant. Based upon information obtained from Williams, Dodson set up a controlled buy on December 18, 2023, at the residence of Nicholas Dulley, located at 1209 East 9th Street, Beardstown, Illinois.

¶ 18        Dodson testified that, when executing the controlled buy, he was assisted by Deputy Jeff Smith. Dodson stated that he and Smith met with Williams and searched him for contraband. After the search, Dodson gave Williams $50 to use to buy methamphetamine from Dulley. Dodson and Smith then watched as Williams rode his bike to Dulley's house and entered. Dodson and Smith watched the house until Williams exited and rode back to the police car.

¶ 19        Dodson and Smith drove Williams to a safe location and searched him again, this time recovering suspected methamphetamine. Although Dodson expected that Williams would purchase the methamphetamine from Dulley, upon debriefing Williams, Dodson learned that Williams purchased the methamphetamine from defendant. Dodson did not provide Williams with audio or video equipment to record the buy. (Smith also testified at trial, and his testimony was consistent with Dodson's testimony. However, Smith added that the buy was not recorded because they did not have the equipment at the time.)

¶ 20        Based upon the controlled buy, Dodson obtained a search warrant for 1209 East 9th

Street and an arrest warrant for defendant. Dodson and other deputies executed the search warrant on January 18, 2023. When they arrived, Dodson saw a bicycle outside the residence that he knew belonged to defendant. Dodson and the other deputies knocked on the door, and, after a minute or two, defendant answered the door and stepped outside. Dodson placed defendant under arrest, and Deputy Alec Bunfill searched him. Bunfill later testified that he found a white crystalline substance (which further testimony at trial confirmed to be methamphetamine) in defendant's pocket.

¶ 21        Dodson drove defendant to the police department and interviewed him. The prosecutor asked Dodson what defendant told him during the interview, and Dodson answered as follows: "At the time [defendant] had stated he was homeless. He stated that he used to sell I believe it was not in this State particularly or it had been a while since he had sold."

¶ 22        The prosecutor asked Dodson whether he asked defendant about the methamphetamine found in his pocket. Dodson stated that he remembered telling defendant that they found approximately three to five grams of methamphetamine when they arrested him and defendant "kind of made a face at me like no way as I said 3.5 grams to me stating or implying that he knew that was not the correct amount inside of his pocket." Dodson further testified that defendant told him the bag was going to weigh 0.4 grams and the methamphetamine was going to weigh 0.2 grams.

¶ 23        Williams testified that in December 2022, he was given the opportunity to serve as a police informant to "work off" a pending drug paraphernalia charge. Williams testified that deputies asked him to purchase methamphetamine from two different individuals. Williams stated that he purchased methamphetamine from defendant on December 18, 2022, at the address on 9th Street, where both defendant and Dulley were living. Williams explained that, on that date, deputies expected him to buy methamphetamine from Dulley, but when Williams arrived, Dulley

was not there. Defendant, who was inside the house with a female, told Williams that Dulley had left but that defendant "could take care of whatever [Williams] was needing." Williams stated that defendant "got his drug[s] out and weighed it up and sold me like 2.1 grams for 50 bucks something." Williams testified that the methamphetamine was packaged in a baggie. After Williams gave defendant the money, Williams left, met with Dodson, and told Dodson what had occurred inside the house.

¶ 24 On cross-examination, Williams, who had earlier testified that he was 31 years old, acknowledged that he had a history with illegal drugs, starting when he was 17 or 18 years old. Williams testified that he had last used drugs "[a] few days ago" and that he was not under the influence of drugs at the time of his testimony. He also stated that he had known defendant for about two years.

¶ 25 Two forensic scientists from the Illinois State Police Forensic Science Laboratory testified about chemical analyses they performed on the suspected methamphetamine in this case. Specifically, (1) Julia Edwards testified that the substance Dodson retrieved from Williams after the December 2022 controlled buy was 1.8 grams of methamphetamine and (2) Kristen Stiefvater testified that the substance Bunfill retrieved from defendant's pocket upon his arrest in January 2023 was 0.4 grams of methamphetamine.

¶ 26 Defendant did not testify or present any evidence.

¶ 27 The jury found defendant guilty of both offenses.

¶ 28 In May 2023, the trial court sentenced defendant to concurrent terms of seven years for methamphetamine delivery and five years in prison for possession of methamphetamine.

¶ 29 This appeal followed.

¶ 30 II. ANALYSIS

¶ 31 Defendant appeals, arguing that (1) the State did not prove him guilty beyond a reasonable doubt because the only testimony that he sold methamphetamine came from a drug addict and (2) the trial court erred by not requiring the disclosure of the identity of the confidential informant more than 30 days prior to trial.

¶ 32 We disagree and affirm.

¶ 33 A. The Sufficiency of the Evidence

¶ 34 1. *The Applicable Law*

¶ 35 When a defendant challenges the sufficiency of the evidence, a reviewing court "asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Jones*, 2023 IL 127810, ¶ 28, 216 N.E.3d 165. "A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses." *Id.* "All reasonable inferences from the evidence must be drawn in favor of the State." *Id.* "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 36 2. *This Case*

¶ 37 Defendant argues that the evidence was insufficient to find him guilty of delivery of methamphetamine because that conviction was supported "solely upon the uncorroborated testimony of a confidential informant with an admitted drug history who was working off charges for drug paraphernalia."

¶ 38 Defendant relies primarily on *People v. Bazemore*, 25 Ill. 2d 74, 78, 182 N.E.2d 649, 651 (1962), in which the supreme court reversed a trial court's finding the defendant was

- 7 -

guilty of the sale of narcotics because it was based solely on the uncorroborated testimony of a drug addict. In that case, an informant told police that he had observed the defendant selling drugs outside of a pool hall. *Id.* at 75. The police then met with the informant and gave him $10 to buy drugs but did not maintain surveillance as the informant went to the pool hall. *Id.* The police did not arrest the defendant until months later, and when they did, the defendant was not in possession of any drugs. *Id.*

¶ 39 When reversing the defendant's conviction, the supreme court first acknowledged that "[t]he credibility of witnesses and the weight to be afforded their testimony are essentially matters to be determined by the court or jury," which the court was "loathe to disturb." *Id.* at 77. The court then observed, however, that it had conducted a "searching analysis of the record" and found the informant's testimony that he bought drugs from the defendant to be "entirely uncorroborated." *Id.* The supreme court noted:

> "This is not a case where the informer's accusation receives corroboration from close police surveillance of the transaction, from an immediate arrest, or from the finding of marked money on the accused, but one which developed in such a way that the informer was at liberty to name almost any person he wished to select as the guilty one." *Id.*

¶ 40 The present case is factually distinguishable from *Bazemore*. First, the police maintained close surveillance of Williams. Dodson and Smith made sure Williams was not in possession of drugs before entering the home, and they watched him continuously as he traveled to the home, entered and exited the home, and returned to the police car, where he turned over methamphetamine that he said he purchased from defendant.

¶ 41 Second, when the police arrested defendant on a later date, not only did they find

him to be in possession of methamphetamine, but he also admitted that he had sold methamphetamine in the past. Further, expert testimony at trial confirmed that defendant accurately told the police the precise weight of both the methamphetamine and the packaging found on his person when they arrested him. Defendant's knowledge of the weight of the plastic packaging in particular supports the conclusion that he did not simply use methamphetamine, but instead sold methamphetamine.

¶ 42 This is not a case like *Bazemore*, in which the informant's testimony is completely uncorroborated. To the contrary, the State in this case presented significant evidence that strongly corroborated Williams's testimony that he purchased methamphetamine from defendant. Accordingly, we reject defendant's argument that his conviction was supported *solel*y by the uncorroborated testimony of a drug addict. Instead, we defer to the jury's assessment of the evidence and conclude that the evidence was sufficient to support defendant's conviction for delivery of methamphetamine.

¶ 43 B. The Disclosure of Williams's Identity Less Than 30 Days Before Trial

¶ 44 1. *The Applicable Law*

¶ 45 Illinois Supreme Court Rule 412(a)(i) (eff. Mar. 1, 2001) requires the prosecution to disclose to the accused "the names and last known addresses of persons whom the State intends to call as witnesses." Rule 412(j) provides that "[d]isclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure should not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." Ill. S. Ct. R. 412(j)(ii) (eff. Mar. 1, 2001).

¶ 46 "There is no fixed rule as to when an informant's identity must be disclosed, and the decision will be made on the circumstance of each case, by balancing the public interest in

protecting informants against the right of an accused to prepare a defense." *People v. Woods*, 139 Ill. 2d 369, 378, 565 N.E.2d 643, 648 (1990). Failure to comply with discovery requirements "does not require a reversal absent a showing of surprise or undue prejudice. [Citation.] The burden of showing surprise or prejudice is upon the defendant." *People v. Cortez*, 361 Ill. App. 3d 456, 466, 837 N.E.2d 449, 458 (2005).

¶ 47     A trial court's rulings on discovery motions are reviewed for an abuse of discretion, which occurs when the ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court. *People v. Brown*, 2023 IL App (4th) 220476, ¶ 25.

¶ 48                                            2. *This Case*

¶ 49     Defendant argues for the first time on appeal that the trial court's failure to require disclosure of the identity of the confidential informant more than 30 days prior to trial caused defendant to be at a disadvantage as he prepared for trial, denying him a fair trial. However, defendant has forfeited this argument because he failed to raise the issue in a posttrial motion. To preserve an error for review, a defendant must both object to the error at trial and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. A defendant's failure to do either results in forfeiture of that issue on appeal. *Id.*

¶ 50     Moreover, at the March 20, 2023, hearing, defendant acquiesced to the April 17, 2023, jury trial setting, which was less than 30 days away. We agree with the State that, by agreeing to the April 17 date and not objecting that it violated the 30-day disclosure requirement the trial court had just set, defendant acquiesced to the ruling and cannot complain on appeal that it constituted an error. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 60, 129 N.E.2d 755 ("It is well settled that a party cannot acquiesce to the manner in which a trial court proceeds and later claim on appeal that the trial court's actions constituted error.").

¶ 51        Even ignoring the forfeiture, defendant's claim fails on its merits, and we reject it. The State disclosed the informant's identity on March 21, which was 27 days before the April 17 jury trial. Defendant has failed to persuade us that he was disadvantaged by receiving the disclosure 27 days before trial instead of 30 days before trial.

¶ 52        In his brief, defendant asserts that he was at a disadvantage because the State disclosed the informant's identity but not his address. Defendant contends that, as a result, he was unable to contact Williams to attempt to learn his testimony, causing defendant to learn for the first time at trial that a female was present when defendant sold Williams the methamphetamine. Even assuming defendant's assertion that he did not receive Williams's contact information was true (because it is not found in the record), we fail to see how defendant's alleged disadvantage is tied to a three-day delay in receiving the information. Put another way, defendant fails to explain how having the disclosure 30 days before trial instead of just 27 days before trial would have permitted him to locate Williams and possibly to ascertain what his testimony might be.

¶ 53        Accordingly, defendant has failed to establish that he was prejudiced in any way by the trial court's failure to require the disclosure of Williams's identity 30 days before trial when defendant received the disclosure 27 days before trial.

¶ 54                                III. CONCLUSION

¶ 55        For the reasons stated, we affirm the trial court's judgment.

¶ 56        Affirmed.