THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY G. BLAIR, Defendant-Appellant.

Second District    No. 2—07—0862

Opinion filed September 29, 2009.

SCHOSTOK, J., concurring in part and dissenting in part.

Patricia Unsinn and Jonathan Krieger, both of State Appellate Defender's Office, of Chicago, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Stephanie Hoit Lee, of Algonquin, for the People.

JUSTICE HUDSON delivered the opinion of the court:

Following a jury trial in the circuit court of Winnebago County, defendant, Ricky G. Blair, was found guilty of two counts of aggravated domestic battery (one count based on great bodily harm and one count based on permanent disfigurement) (720 ILCS 5/12—3.3(a) (West 2006)). The trial court vacated the permanent-disfigurement-based conviction on one-act, one-crime principles and sentenced defendant to seven years' imprisonment. On appeal, defendant urges the reversal of his conviction, on two grounds. First, he asserts that the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) in that it did not ask each prospective juror during *voir dire* if he or she understood and accepted each of four key principles governing criminal trials. Second, defendant contends that the State violated Supreme Court Rule 412 (188 Ill. 2d R. 412) by calling a doctor to provide testimony without first disclosing, via a statement of his qualifications, the doctor's status as an expert. For the reasons set forth herein, we agree with the first claim of error and accordingly reverse defendant's conviction and remand the cause for a new trial.

## I. BACKGROUND

Defendant was charged by superseding indictment with one count of aggravated battery (720 ILCS 5/12—4(b)(1) (West 2006)), two counts of aggravated domestic battery based on permanent disfigurement (720 ILCS 5/12—3.3(a) (West 2006)), and one count of aggravated domestic battery based on great bodily harm (720 ILCS 5/12—3.3(a) (West 2006)). The charges stemmed from a March 2006 altercation between defendant and Joya Scott at a Rockford housing project. The aggravated battery count and one of the aggravated domestic battery (permanent disfigurement) counts related to a knife wound sustained by Scott in her arm. The remaining counts alleged that defendant punched Scott in the face, causing permanent disfigurement (a laceration) and great bodily harm (a broken nose). Jury selection commenced on June 11, 2007. At trial, Scott claimed that defendant attacked her

unprovoked. The State also presented the testimony of radiologist Edward Steffen, who, over an objection by the defense, testified that a CAT scan showed Scott's nose was broken. Testifying on his own behalf, defendant stated that he hit Scott only because he thought she was going to stab him with a steak knife. The jury acquitted defendant of the charges related to the knife wound to Scott's arm but convicted him of the other two counts. Upon the motion of the State, however, the trial court, citing the one-act, one-crime rule, vacated the conviction of aggravated domestic battery (permanent disfigurement). Defendant was sentenced to seven years' imprisonment. Following the denial of his posttrial motion, defendant filed the present appeal.

## II. ANALYSIS

### A. *Voir Dire*

On appeal, defendant first argues that he was denied a fair and impartial jury by the court's failure to question prospective jurors during *voir dire* in compliance with Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). We note initially that defendant did not object to the manner in which *voir dire* was being conducted and he did not include this issue in his posttrial motion. Normally, such omissions result in forfeiture of the contested issue on appeal. See *People v. Barrow*, 133 Ill. 2d 226, 260 (1989). However, Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) creates an exception to the forfeiture rule by allowing courts of review to note "[p]lain errors or defects affecting substantial rights." A reviewing court may consider a forfeited error under the plain-error rule when "the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or when "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). As the supreme court explained, the "closely balanced evidence" prong of the plain-error doctrine "guards against errors that could lead to the conviction of an innocent person," while the substantial-rights prong "guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Herron*, 215 Ill. 2d at 186. In order for plain error to exist, however, we must first determine if an error actually occurred. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

According to defendant, Rule 431(b) requires the trial court to ascertain during *voir dire* each potential juror's understanding and acceptance of the legal principles that: (1) the defendant is presumed innocent; (2) the State must prove the defendant guilty beyond a reasonable doubt; (3) the defendant need not present any evidence on his

own behalf; and (4) the defendant's failure to testify cannot be held against him. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Defendant claims that during jury selection in this case, the court did not ask *any* prospective juror about his or her understanding and acceptance of *all* of the principles listed in Rule 431(b). Thus, defendant asserts, the trial court's incomplete questioning violated Rule 431(b) and deprived him of a fair and impartial jury. The State responds that Rule 431(b) is sufficiently complied with if, after being informed of the four principles set forth in Rule 431(b), each of the prospective jurors agrees to follow the law as given by the trial court. Because the admonishments provided by the trial court in this case conformed with this procedure, the State reasons that each juror understood and accepted the principles contained in Rule 431(b) and thus no error occurred through the manner in which the trial court questioned the prospective jurors.

We begin our analysis by reviewing the genesis of Supreme Court Rule 431(b). Rule 431(b) was promulgated to give effect to our supreme court's decision in *People v. Zehr*, 103 Ill. 2d 472 (1984). See 177 Ill. 2d R. 431, Committee Comments, at 1xxix. In *Zehr*, the trial court refused defense counsel's request to ask prospective jurors during *voir dire* three supplemental questions concerning the State's burden of proof, the defendant's right not to testify, and the presumption of innocence. The supreme court held that the trial court's refusal to ask the questions posed by defense counsel constituted "prejudicial error" and required reversal of the judgment. *Zehr*, 103 Ill. 2d at 477-78. The court explained:

> "We are of the opinion that essential to the qualification of jurors in a criminal case is that they know that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. If a juror has a prejudice against any of these basic guarantees, an instruction given at the end of the trial will have little curative effect. \*\*\* We agree with the appellate court that '[e]ach of these questions goes to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury' [citation], and although they need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on *voir dire*." *Zehr*, 103 Ill. 2d at 477.

The four principles cited by the supreme court have become known as the *Zehr* principles. *People v. Martinez*, 386 Ill. App. 3d 153, 158 (2008).

In 1997, to ensure compliance with the requirements of *Zehr*, the supreme court rewrote Rule 431. 177 Ill. 2d R. 431, Committee Comments, at lxxix. Although the Supreme Court Rules Committee recommended that the revised rule require the trial court to question prospective jurors on each of the *Zehr* principles, the supreme court modified the proposal so that questioning on the *Zehr* principles would be required only if the defendant so requested. *People v. Glasper*, 234 Ill. 2d 173, 187 (2009), citing Illinois Supreme Court Rules Committee, Recommendations to the Supreme Court of Illinois (March 1997). To effectuate the supreme court's intent, the 1997 version of Rule 431 added subsection (b), which provided in relevant part that, "[i]f requested by the defendant, the court shall ask each potential juror, individually or in a group, whether that juror understands and accepts" the four *Zehr* principles. 177 Ill. 2d R. 431(b). According to the committee comments, the new language sought to "end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix.

More recently, the supreme court amended Rule 431(b) to eliminate the requirement that the defendant request the trial court to ask prospective jurors about the *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Thus, Rule 431(b) now provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

Since jury selection in defendant's trial commenced after May 1, 2007, the 2007 version of Rule 431(b) governs this case.

The supreme court has clearly indicated that its rules are not aspirational or mere suggestions. *Glasper*, 234 Ill. 2d at 189; *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). Rather, they have the force of law, and there is a presumption that they will be obeyed and enforced as written. *Glasper*, 234 Ill. 2d at 189. To this end, we interpret supreme

court rules in the same manner as statutes. See 134 Ill. 2d R. 2(a), Committee Comments, at 2 ("[p]aragraph (a) makes it clear that the same principles that govern the construction of statutes are applicable to the [supreme court] rules"); *In re J.T.*, 221 Ill. 2d 338, 355 (2006) ("[o]ur rules of statutory construction apply with equal force to the interpretation of all supreme court rules"). The cardinal rule of construction is to ascertain and give effect to the intent of the drafter. *People v. Allen*, 313 Ill. App. 3d 842, 846 (2000). The best evidence of the drafter's intent is the plain and ordinary language of the rule. *J.T.*, 221 Ill. 2d at 355. Where the language of a rule is clear and unambiguous, it will be given effect without resort to any other interpretive aids. *Allen*, 313 Ill. App. 3d at 846. The interpretation of a supreme court rule is a matter of law subject to *de novo* review. *People v. Perkins*, 229 Ill. 2d 34, 41 (2007); *People v. Stewart*, 365 Ill. App. 3d 744, 751 (2006).

As noted above, the 2007 version of Rule 431(b), which applied in this case, provides that the trial court "*shall* ask each potential juror, individually or in a group, whether that juror understands and accepts" the *Zehr* principles, except that "no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects." (Emphasis added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007). The rule further provides that the trial court "*shall* provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." (Emphasis added.) Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Where a statute or rule contains the word "shall" unaccompanied by any exceptions or limitations, it constitutes a "clear expression of legislative intent to impose a mandatory obligation." *People v. O'Brien*, 197 Ill. 2d 88, 93 (2001); compare *O'Brien*, 197 Ill. 2d at 93 (holding that the word "shall" in statute prohibiting the operation of an uninsured motor vehicle (625 ILCS 5/3—707 (West 1998)) evinced a legislative intent to create an absolute liability offense, because the statute failed to include any exceptions), with *Allen*, 313 Ill. App. 3d at 846-47 (concluding that the word "shall" in Illinois Supreme Court Rule 431(a) (177 Ill. 2d R. 431(a)) was directory because it was subject to the factors enumerated in the rule).

Rule 431(b) does not contain any exceptions or limitations with respect to the trial court's duty to question prospective jurors about the presumption of innocence, the State's burden of proof, and the defendant's right not to offer any evidence on his own behalf. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Thus, we conclude that pursuant to the plain language of Rule 431(b), the trial court has an affirmative obligation to ask prospective jurors whether they understand and ac-

cept these three principles. Similarly, we conclude that, in the absence of an objection by the defendant, Rule 431(b) compels the trial court to question prospective jurors regarding their understanding and acceptance of the principle that a defendant's failure to testify cannot be held against him. Furthermore, the plain language of Rule 431(b) makes clear that, in making these inquiries, the trial court must provide the prospective jurors an "opportunity to respond" whether they understand and accept all of the *Zehr* principles. See *People v. Blanton*, No. 4—08—0120, slip op. at 6 (June 17, 2009) ("Rule 431(b) requires the trial court to address all four *Zehr* principles in a manner that allows each venireperson an opportunity to respond whether he or she understands and accepts those principles"); *People v. Alexander*, 391 Ill. App. 3d 419, 430 (2009) (holding that the trial court's failure to specifically ask prospective jurors if they understood and accepted the four principles outlined in Rule 431(b) contravened the language of the rule); *People v. Anderson*, 389 Ill. App. 3d 1, 8 (2009) ("The clear language of Rule 431(b) requires the court to ensure jurors are qualified to know, understand, and accept the enumerated principles and are provided with an opportunity to respond"); *People v. Stump*, 385 Ill. App. 3d 515, 520 (2008) ("a finding that the trial court had merely the discretion (after May 1, 2007) to question potential jurors of their understanding and acceptance of the *Zehr* principles would render the term 'shall' meaningless and superfluous").

To the extent that there could be any doubt, the history of the rule underscores the mandatory nature of the trial court's inquiry under Rule 431(b). As noted above, the principles enunciated in Rule 431(b) were first formulated in *Zehr* in 1984 (*Zehr*, 103 Ill. 2d at 476-78) and incorporated into the supreme court rules in 1997 (177 Ill. 2d R. 431(b)). Both *Zehr* and the 1997 version of Rule 431(b) required the trial court to ask prospective jurors about the four key principles governing criminal trials only if the defendant so requested. In 2007, however, the supreme court eliminated from Rule 431(b) the language requiring that the defendant request the trial court to ask prospective jurors about the *Zehr* principles. Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Every amendment to a statute or rule is presumed to have a purpose, and a court must consider the language of the amendment in light of the need for the amendment and the purpose it serves. *Allen*, 313 Ill. App. 3d at 846. In this case, the only purpose we can discern for eliminating the language requiring the defendant to request the trial court to ask prospective jurors about the *Zehr* principles is to place an affirmative duty upon the trial court to ensure that prospective jurors

in every criminal jury trial understand and accept the *Zehr* principles. See *People v. Graham*, 393 Ill. App. 3d 268, 273 (2009) ("By eliminating the language requiring the defendant to request that the jurors be questioned as to the *Zehr* principles, the rule now places an affirmative *sua sponte* duty on the trial courts to ask potential jurors in each and every case whether they understand and accept the *Zehr* principles"); *Blanton*, slip op. at 5 (noting that after the adoption of the 2007 amendment to Rule 431(b), asking jurors about the *Zehr* principles is no longer dependent upon a request by defense counsel); *Anderson*, 389 Ill. App. 3d at 8 ("When the 2007 amendment deleted the language '[i]f requested by the defendant,' the rule charged trial courts with an affirmative *sua sponte* duty to ask potential jurors whether they understand and accept the *Zehr* principles in each and every case"); *Stump*, 385 Ill. App. 3d at 520 ("The language, '[i]f requested by the defendant' was deleted [from Rule 431(b)], leaving the court with the affirmative duty to *sua sponte* question the jurors"). In short, following enactment of the 2007 amendment to Rule 431(b), the trial court must *sua sponte* address the *Zehr* principles in a manner that allows each prospective juror an opportunity to respond whether he or she understands and accepts those principles.

Having determined the parameters of Rule 431(b), we must now review the record in this case and decide whether the inquiry conducted by the trial court complied with the mandate of the rule. As noted previously, jury selection in this case commenced on June 11, 2007. The parties selected a jury of 12 plus 2 alternates over the course of two days from three panels of prospective jurors. Before the jury-selection process began, the trial court told the parties that it is required by supreme court rule to *voir dire* the prospective jurors regarding the principles that: (1) the defendant is presumed innocent of the charges against him; (2) before the defendant can be convicted, the State must prove the defendant guilty beyond a reasonable doubt; (3) the defendant is not required to offer any evidence on his own behalf; and (4) the defendant's failure to testify cannot be held against him. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007). Defense counsel told the trial court that she did not object to asking prospective jurors about the last principle. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007) (providing that no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects). The court also cautioned the parties not to question the prospective jurors on any matters that the court covers in *voir dire*, including "discussions about burden of proof or presumption of innocence or reasonable doubt or anything like that."

Thereafter, the prospective jurors entered the courtroom and, during its initial comments to the venire, the trial court stated:

"The defendant is presumed to be innocent of the charges against him. The defendant does not have to prove his innocence. He does [*sic*] have to testify or call any witnesses in his defense.

If he chooses not to testify, you may not consider that decision in any way in arriving at your verdict. If he does choose to testify or present evidence, you are to consider that evidence in the same manner as any other evidence in the case.

The State has the burden of proof beyond a reasonable doubt. This is their burden in every criminal case."

The court later told the venire that they have "an absolute duty to follow the law as given to you by the Court, both during the case and at the end of the case."

The clerk then called the first panel of 14 prospective jurors from the venire and the court began *voir dire*. The following exchange occurred between the court and the first panel of prospective jurors:

"THE COURT: Do each of you understand that in a criminal case such as this, the burden of proof is on the State to prove to you the defendant's guilt beyond a reasonable doubt; do you understand that?

(The jury panel collectively answers yes.)

THE COURT: Will each of you agree to apply and follow the law as stated by the Court, despite any personal feelings you might have about the law?

(The jury panel collectively answers yes.)

THE COURT: Can each of you keep an open mind throughout the trial, wait until the case is concluded to reach any conclusions about any of the fact questions in this case?

(The jury panel collectively answers yes.)

THE COURT: Do any of you have any biases or prejudices that prevents you from being a fair juror to both the State and to the defense?

(The jury panel collectively answers no.)"

After questioning individual prospective jurors regarding their previous experiences with crime and the justice system, the court posed the questions set forth below, which the first panel of prospective jurors answered as indicated:

"THE COURT: Do any of you have any personal beliefs or philosophical beliefs or religious beliefs that would make it difficult to sit in judging the guilt of the defendant?

(The jury panel collectively answers no.)

THE COURT: Is there anything about the nature of these charges in and of themselves that would affect your ability to be fair and impartial to both sides?

(The jury panel collectively answers no.)

THE COURT: If after you heard all the evidence in this case and arguments of counsel and have been instructed on the law that applies to this case, if you believe the State has proven the defendant's guilt beyond a reasonable doubt, do you understand it would be your duty to vote to find him guilty; do you understand that?

(The jury panel collectively answers yes.)

THE COURT: Can you do that?

(The jury panel collectively answers yes.)

THE COURT: On the other hand, if you reach the same end point in the case after you heard all evidence and arguments of counsel and instructions of law, you get back in the jury room, and you're not convinced beyond a reasonable doubt that the State has proven each and every element of the charge against the defendant, do you understand it would be your duty to vote to find him not guilty?

(The jury panel collectively answers yes.)

THE COURT: Could you do that?

(The jury panel collectively answers yes.)

THE COURT: Is there any reason I haven't asked you about that would affect your ability to be able to be fair to both sides in this case?

(The jury panel collectively answers no.)"

Seven members of the first panel were ultimately sworn in as jurors. The jurors were instructed to return the following day and were not present for the *voir dire* of the remaining panels.

The clerk then called the second panel, consisting of six prospective jurors, and the court began *voir dire*. The court asked the second panel whether it understood that the burden in a criminal case is proof beyond a reasonable doubt. The record reflects that the panel answered a collective "yes." The court also asked the panel as a group whether it "agreed with" the burden of proof and whether it could "apply and follow the law." The panel collectively answered both inquiries in the affirmative. In response to the court's questions, the panel members also indicated that they would not have any difficulty accepting the proposition that defendant is presumed to be innocent of the charges against him and they would be able to give defendant the presumption of innocence. The court also asked the members of the second panel whether they understood that it is the State's burden to prove defendant's guilt beyond a reasonable doubt. Again, the panel answered a collective "yes." In addition, the panel indicated that it understood that it had a duty to convict if the State were to prove defendant guilty beyond a reasonable doubt. Conversely, the panel indicated that it understood that it had a duty to acquit if the State

failed to sustain its burden of proof. Finally, the court told the panel members that defendant does not have to testify or present any evidence and that if defendant elects not to testify or present evidence, the jurors cannot hold defendant's decisions against him in reaching a verdict. The panel members indicated collectively that they understood this principle. Ultimately, two members of the second panel were sworn in as jurors.

The following day, additional prospective jurors were summoned to the courtroom. During its initial comments to them, the trial court articulated the four principles outlined in Rule 431(b). The court also told the prospective jurors that they have "an absolute duty to follow the law and accept the law as given to you by the Court throughout the case." The clerk then called a third panel, consisting of 14 prospective jurors. During the *voir dire* process, the court posed some questions to the third panel collectively. Among those questions were whether the panel members understood that the State has the burden of demonstrating defendant's guilt beyond a reasonable doubt and whether they agreed with that proposition. The record reflects that the panel members collectively answered "yes" to both inquiries. Subsequently, the panel was asked if it would "apply and follow the law as stated by the Court." The panel members answered collectively that they would. The court also asked the panel members if they understood that defendant is presumed innocent and whether they would be able to give him that presumption. The panel members answered both inquiries in the affirmative. In addition, the court asked the panel members if they understood that defendant does not have to testify or present any evidence and that if defendant elects not to testify or present any evidence, the panel members could not hold that against defendant in reaching their verdict. Again, the panel members collectively answered "yes." Ultimately, three members of the third panel were sworn in as jurors and two members were sworn in as alternates.

This record establishes that the trial court questioned the members of the second and third panels of prospective jurors regarding all four *Zehr* principles and that it provided the members of those panels with an opportunity to respond whether they understood and accepted *some* of the principles. However, the trial court did not ensure that the prospective jurors from the second and third panels had the opportunity to respond whether they understood and accepted *all* of the *Zehr* principles. In particular, the trial court failed to ascertain whether the prospective jurors in the second and third panels accepted the principles that defendant was not required to offer any evidence in his own behalf and that defendant's failure to testify could not be held

against him. More significant, an examination of the *voir dire* conducted by the trial court with respect to the members of the first panel establishes that although the court did ask if the potential jurors understood and accepted one of the *Zehr* principles (that the State has the burden of proving the defendant guilty beyond a reasonable doubt), the court did not ask them about their understanding and acceptance of any of the remaining three *Zehr* principles (that the defendant is presumed innocent of the charges against him, that the defendant is not required to offer evidence on his own behalf, and that the defendant's failure to testify cannot be held against him). Ultimately, seven members of the first panel were sworn in as jurors and passed judgment upon the charges against defendant. Based on this record, we conclude that the manner in which the trial court conducted *voir dire* failed to fully comply with Rule 431(b) and therefore constituted error. See *Glasper*, 234 Ill. 2d at 189 (holding that the trial court committed error when it declined to honor the defendant's request to question the venire in accordance with the 1997 version of Rule 431(b)(4)); *Graham*, 393 Ill. App. 3d at 275 ("By failing to ascertain whether all of the potential jurors understood and accepted all the *Zehr* principles, the trial judge failed to comply fully with Rule 431(b)"); *Blanton*, slip op. at 7 ("[E]rror clearly occurred here because the trial court did not question each venireperson as to whether he or she understood and accepted the fourth *Zehr* principle"); *Alexander*, 391 Ill. App. 3d at 430 (acknowledging that the trial court's failure to "specifically ask" potential jurors if they understood and accepted the *Zehr* principles was error); *Anderson*, 389 Ill. App. 3d at 8 (reversing the defendant's conviction because of the trial court's failure to "satisfy the stringent requirements of Rule 431(b)"); *Stump*, 385 Ill. App. 3d at 519 (holding that the trial court's failure to "specifically comply" with Rule 431(b) resulted in error).

The State notes that the trial court *told* all of the prospective jurors about the four *Zehr* principles and that they have a duty to follow the law. The State asserts that these admonishments were sufficient to demonstrate that each juror understood and accepted the *Zehr* principles. We disagree. The committee comments to Rule 431 specifically state that the purpose of adding subsection (b) to the rule was to "end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments, at lxxix; see also *Alexander*, 391 Ill. App. 3d at 430 (holding that it was error for the trial court to simply inform prospective jurors of the *Zehr* principles without specifically asking whether they understood and accepted them as required by Rule 431(b)); *Anderson*,

389 Ill. App. 3d at 8 ("The clear language of Rule 431(b) requires the court to ensure jurors are qualified to know, understand, and accept the enumerated principles and are provided with an opportunity to respond"). Adopting the State's position would not only ignore the plain language of Rule 431(b), but would also contradict the purpose of the rule as indicated by the committee comments cited above. Indeed, that the prospective jurors were aware of the *Zehr* principles says nothing about whether the trial court provided each prospective juror an opportunity to respond whether he or she *understands* and *accepts* all four *Zehr* principles as Rule 431(b) expressly requires. See *Graham*, 393 Ill. App. 3d at 274 (rejecting the State's argument that the trial judge's reference to the *Zehr* principles in her remarks to the jury satisfied Rule 431(b), because the trial court's "admonitions" were not posed as questions and did not provide the prospective jurors with an opportunity to respond). Thus, we find that the fact that all of the prospective jurors were *informed* of the *Zehr* principles and instructed that they have a duty to follow the law is insufficient, by itself, to comply with the mandate of Rule 431(b). See *Anderson*, 389 Ill. App. 3d at 8.

Having found error, we next consider whether the error was so serious that it undermined the fairness of defendant's trial and impacted the integrity of the judicial process. At the outset, we recognize that our supreme court has stated that not every violation of its rules mandates reversal. *Glasper*, 234 Ill. 2d at 193. Nevertheless, where appropriate, courts in this state have not hesitated to reverse a defendant's conviction in response to a violation of a supreme court rule. See, *e.g.*, *People v. Daniels*, 172 Ill. 2d 154, 164-69 (1996) (reversing the defendant's conviction in light of a violation of Supreme Court Rule 434(d) (134 Ill. 2d R. 434(d)), regarding the number of peremptory challenges permitted in a capital case); *People v. Sharrod*, 271 Ill. App. 3d 684, 690 (1995) (holding that State's failure to disclose witness's juvenile supervision violated Supreme Court Rule 412(c) (134 Ill. 2d R. 412(c)) and required reversal); *People v. DeRossett*, 237 Ill. App. 3d 315, 332-33 (1992) (holding that the failure to comply with Supreme Court Rule 235 (134 Ill. 2d R. 235), which pertains to opening statements, resulted in reversible error). We believe that the error that occurred in this case presents one of these instances.

Both the federal and state constitutions guarantee the right to a trial by an impartial jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§8, 13; *People v. Strain*, 194 Ill. 2d 467, 475 (2000). *Voir dire* promotes this right by allowing the court and the parties "to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose

minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath." *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993); see also *Allen*, 313 Ill. App. 3d at 846 ("[t]he purpose of *voir dire* is to assure the selection of an impartial jury"). In furtherance of this purpose, the supreme court implemented the procedure set forth in the 2007 version of Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)), which requires the trial court to ask each potential juror whether he or she understands and accepts the bedrock principles of our criminal justice system. See *Zehr*, 103 Ill. 2d at 477 (quoting *People v. Zehr*, 110 Ill. App. 3d 458, 461 (1982), and noting that each of the four *Zehr* principles " 'goes to the heart of a particular bias or prejudice which would deprive [a] defendant of his right to a fair trial and impartial jury' "). As noted above, the trial court failed to ask all of the prospective jurors whether they understood and accepted all four *Zehr* principles. More significant, the trial court failed to ask a majority of the jurors whether they understood and accepted three of the four *Zehr* principles. In light of the mandatory language of amended Rule 431(b) and given the nature of the error in this case, we hold that the error denied defendant a substantial right, undermined the fairness of his trial, and impacted the integrity of the judicial process. We therefore reverse defendant's conviction and remand the matter for a new trial.

The dissent asserts that our disposition is inconsistent with the supreme court's recent decision in *Glasper*. In *Glasper* the supreme court held that the failure to provide one of the four *Zehr* admonishments did not result in "structural error." *Glasper*, 234 Ill. 2d at 199. At issue in that case was whether the trial court committed reversible error when, despite defense counsel's request, it failed to ask prospective jurors if the defendant's decision not to testify would influence their verdict. At the time the trial in *Glasper* was held, the 1997 version of Rule 431(b) was in effect. The supreme court held that the trial court committed error, but that the error was harmless. *Glasper*, 234 Ill. 2d at 185-86. The court explained:

> "The error in this case does not involve a fundamental right, or even a constitutional protection. The error involves a right made available only by rule of this court. Significantly, the right in question, at the time of the instant trial, was not afforded to all defendants—only those defendants who chose to exercise it." *Glasper*, 234 Ill. 2d at 193.

Despite its holding, the court did not state that a violation of Rule 431(b) could never result in reversible error. *Glasper*, 234 Ill. 2d at 200. It noted, for instance, that a trial before a biased jury would

constitute "structural error" not subject to harmless-error review. *Glasper*, 234 Ill. 2d at 200.

The dissent notes that it is the obligation of a lower court of review to follow its supreme court's most recent pronouncement on a particular issue. See *People v. Romero*, 387 Ill. App. 3d 954, 968 (2008). We certainly recognize and agree with this principle. However, as noted above, the *Zehr* violation that occurred in *Glasper* and the violation that occurred in this case are fundamentally different. Additionally, the instant case is distinguishable from *Glasper* in another significant respect. The *Glasper* court emphasized that its holding was limited to the 1997 version of Rule 431(b). *Glasper*, 234 Ill. 2d at 200. Central to the supreme court's analysis was the fact that, under the 1997 version of the rule, the provision of the *Zehr* admonishments was dependent upon the defendant's request. In this case, the 2007 version of Rule 431(b) was in effect at the time of defendant's trial. Unlike the 1997 version of the rule, the 2007 version requires the trial court to *sua sponte* ascertain each prospective juror's understanding and acceptance of all four *Zehr* principles in all criminal jury trials. Given that the supreme court expressly limited its holding in *Glasper* to the 1997 version of Rule 431(b), that decision does not purport to govern application of the 2007 version of the rule. See *Glasper*, 234 Ill. 2d at 200 ("We emphasize that this holding is limited to the version of Rule 431(b)(4) that was in effect at the time of the instant trial, and would not necessarily apply to subsequent versions of the rule").

We also emphasize that *Glasper* is factually distinguishable. *Glasper* involved the trial court's failure to ask the prospective jurors about just one of the *Zehr* principles. The supreme court found this error insufficient to require reversal of the defendant's conviction. The error in this case is much more substantial. Here, the trial court did not ask any prospective juror about his or her understanding and acceptance of all four principles enumerated in Rule 431(b). Indeed, the court failed to question the first panel of prospective jurors regarding three of the four *Zehr* principles. As noted above, this latter action is especially significant given the fact that a majority of jurors were drawn from the first panel. Providing prospective jurors with the opportunity to respond whether they understand and accept the *Zehr* principles allows the court and the parties to ascertain whether any of the prospective jurors harbor a particular bias or prejudice. *Zehr*, 103 Ill. 2d at 477. Given the manner in which *voir dire* was conducted in this case, this purpose was not achieved.

The State directs us to two cases, *Alexander* and *Stump*, which it claims support its position. In *Stump*, the trial court informed prospective jurors of the four *Zehr* principles at the start of *voir dire*. The

trial court then specifically questioned each prospective juror regarding his or her understanding and acceptance of the State's burden of proof and the presumption of innocence. Thereafter, defense counsel questioned 8 of the 12 impaneled jury members about whether they understood that the defendant is not required to testify or present any evidence, and whether, if the defendant elected not to testify, they would hold this choice against him. With respect to the last four jury members, defense counsel asked only if the jurors presumed the defendant innocent, if they understood the State's burden, and if they would hold the State to that burden. Despite acknowledging the "mandatory nature" of Rule 431(b) (*Stump*, 385 Ill. App. 3d at 520), the Fourth District, citing to a case from our supreme court, determined that it was not required to give "full effect" to the supreme court rules and engaged in a harmless-error analysis. Based on the foregoing evidence, the court then held that although the trial court erred in failing to strictly comply with the requirements of Rule 431(b), any error was harmless because all four *Zehr* principles were "addressed" to each juror at some point during *voir dire* and the evidence presented at trial against the defendant was overwhelming. *Stump*, 385 Ill. App. 3d at 522.

In *Alexander*, the trial court informed the prospective jurors of the four *Zehr* principles at the beginning of *voir dire*. The trial court then proceeded to ask each prospective juror the following series of questions: (1) " 'Do you have any bias against a person merely because he has been charged with a criminal offense?' "; (2) " 'Will you follow the court's instructions regarding the law regardless of your own personal opinion?' "; (3) " 'Will you decide the case without sympathy and prejudice?' "; (4) " 'Will you give both the State and the defendant a fair trial?' "; and (5) " 'Can you wait until the entire case is over and you are actually back in the jury room deliberating before you begin to form your final opinion?' " *Alexander*, 391 Ill. App. 3d at 422. The defendant neither challenged the manner in which the trial court was conducting *voir dire* nor identified the issue in a posttrial motion. Nevertheless, on appeal from his conviction, the defendant argued that he was denied a fair trial because the trial court did not strictly comply with Rule 431(b). A divided panel of the Third District acknowledged that although the trial court informed the prospective jurors of the *Zehr* principles, its failure to ask them if they understood and accepted these principles was error. *Alexander*, 391 Ill. App. 3d at 430. However, the court did not find that the error rose to the level of plain error. *Alexander*, 391 Ill. App. 3d at 430-32. In so holding, the *Alexander* court, relying on *People v. Emerson*, 122 Ill. 2d 411 (1987), noted that the trial court informed the jury pool of the four principles

set forth in Rule 431(b), the court's question regarding the jurors' bias was equivalent to inquiring about the presumption of innocence, and the court asked the jurors a series of questions regarding their ability to follow the court's instructions, decide the case fairly and without prejudice, and wait until the conclusion of all evidence to formulate an opinion. *Alexander*, 391 Ill. App. 3d at 431-32. Justice McDade disagreed with the majority and authored a dissent arguing that the trial court's failure to strictly comply with Rule 431(b) constituted reversible plain error. *Alexander*, 391 Ill. App. 3d at 437 (McDade, J., concurring in part and dissenting in part).

Initially, we point out that *Stump* and *Alexander* contravene the trend of authority regarding the failure to comply with *Zehr* and the 2007 version of Rule 431(b). See *Graham*, 393 Ill. App. 3d at 276 (holding that the trial court's failure to comply with Rule 431(b) denies a defendant a substantial right and thus a fair trial and obviates the need to inquire into the harmfulness or the measure of prejudice to the defendant); *Blanton*, slip op. at 7 (holding that the trial court's failure to question each venireperson as to whether he or she understood and accepted all four *Zehr* principles resulted in reversible error not amenable to harmless-error analysis); *Anderson*, 389 Ill. App. 3d at 8-9 (holding that the trial court's failure to ensure that the jurors were qualified to know, understand, and accept the *Zehr* principles resulted in reversible plain error not subject to harmless-error review). This factor aside, we are not persuaded that either *Stump* or *Alexander* dictates a different result.

*Stump* is factually distinguishable. The *Stump* court found that either the trial court or defense counsel "addressed" each juror with all of the *Zehr* principles at some point. *Stump*, 385 Ill. App. 3d at 522. In this case, the trial court prohibited the parties from addressing the prospective jurors about the *Zehr* principles and the court itself failed to touch upon all four principles during its interactions with the panel members. See also *Graham*, 393 Ill. App. 3d at 275 (acknowledging *Stump*, but noting that Rule 431(b) does not place the duty of compliance upon the State or defense counsel, but rather the trial court).

We decline to follow the majority decision in *Alexander*, which relied on *Emerson*. In *Emerson*, defense counsel asked the trial court to question the prospective jurors during *voir dire* whether they understood the presumption of innocence and whether they had any objection to that principle. The trial court refused defense counsel's request, stating that it had sufficiently covered this topic in comments it made to the venire as a whole. On appeal, the defendant argued that the trial court's failure to inquire about the presumption of innocence violated *Zehr*. The supreme court rejected the defendant's

argument, finding that the purpose of *Zehr* was satisfied because the trial court admonished the prospective jurors generally to follow the jury instructions, inquired whether they would do so, and explained to them that the defendant was presumed innocent until the State proved his guilt beyond a reasonable doubt. *Emerson*, 122 Ill. 2d at 427.

*Emerson*'s applicability is questionable for at least three reasons. First, *Emerson*, which was decided in 1987, predates the enactment of Rule 431(b). Second, the *Emerson* court stated that *"Zehr* did not attempt to prescribe a precise formula for trial judges to use in ascertaining jurors' prejudices or attitudes." *Emerson*, 122 Ill. 2d at 426-27. However, the supreme court did provide a "precise formula" in drafting amended Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)). The rule expressly requires the trial court to ask each prospective juror whether he or she "understands and accepts" each of the *Zehr* principles. Third, *Emerson* does not discuss whether the failure to ask about the *Zehr* principles impacts a substantial right. Thus, we find the *Alexander* majority's reliance on *Emerson* misplaced.

■ In conclusion, our supreme court now requires the trial court to ensure that every prospective juror understands and accepts the principles enumerated in amended Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)). We hold that the failure of the trial court to comply with this mandate, with regard to the majority of the empaneled jurors in this case, compromised defendant's right to a fair and impartial jury (see *Zehr*, 103 Ill. 2d at 477, quoting *Zehr*, 110 Ill. App. 3d at 461; *Allen*, 313 Ill. App. 3d at 846) and impacted the integrity of the judicial process (see *Herron*, 215 Ill. 2d at 179). Accordingly, we reverse defendant's conviction and remand the matter for a new trial.

## B. Dr. Steffen's Testimony

■ Having reversed defendant's conviction and remanded the matter for a new trial, we shall address the second issue raised by defendant since it is likely to arise again on remand. Prior to trial, defendant filed a "Motion for Discovery" requesting the State to disclose, *inter alia*, "[t]he names and last known addresses of persons whom the State intends to call as witnesses at a hearing or trial" and "[a]ll reports or statements of experts made in connection with the particular case *** and a statement of qualifications of the expert." At trial, the State called Dr. Steffen, a board-certified radiologist at SwedishAmerican Hospital. The State elicited testimony as to Dr. Steffen's qualifications and experience. Thereafter, Dr. Steffen testified that although he did not physically examine Scott, he did read all of her X

rays and CAT scans. At that point, defense counsel objected, arguing that, although Dr. Steffen was disclosed as a witness, he was not presented as an expert. Defense counsel further represented that she was not given a copy of Dr. Steffen's *curriculum vitae*. The State responded that Dr. Steffen was properly disclosed as a "treating physician," and the trial court agreed. Thus, the court determined that the disclosure was sufficient and the State was not required to provide the defense with a *curriculum vitae*. Dr. Steffen testified that a CAT scan of Scott's face showed a broken nose. Defense counsel opted not to cross-examine Dr. Steffen. Defendant was eventually convicted on the charge of aggravated domestic battery (great bodily harm) (720 ILCS 5/12—3.3(a) (West 2006)) with a broken nose constituting the element of great bodily harm. Thereafter, defendant filed a posttrial motion arguing, *inter alia*, that Dr. Steffen should not have been allowed to testify, because the State failed to disclose him as an expert. The trial court again rejected defendant's argument.

Supreme Court Rule 412 (188 Ill. 2d R. 412) requires the State, when requested by the defense, to disclose certain material and information to a criminal defendant. The rule states in relevant part:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. ***

* * *

(iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons, and a statement of qualifications of the expert."
188 Ill. 2d Rs. 412(a)(i), (a)(iv).

The purpose of discovery rules, including Rule 412, is to protect the defendant from unfairness, surprise, and inadequate preparation and to afford the defendant an opportunity to investigate the circumstances from which the evidence arose. *People v. Leon*, 306 Ill. App. 3d 707, 712-13 (1999); see also *People v. Hood*, 213 Ill. 2d 244, 258 (2004). As with all discovery provisions, compliance with Rule 412 is mandatory and violations will not be easily excused. *Leon*, 306 Ill. App. 3d at 713.

Defendant asserts that the State violated Rule 412 by calling Dr. Steffen to provide testimony without first disclosing, via a statement of his qualifications, Dr. Steffen's status as an expert. Defendant further asserts that this discovery violation unfairly surprised and prejudiced him. The State responds that Dr. Steffen was called as a "treating physician," not an expert. Therefore, it was not obligated to provide a statement of his qualifications. Where, as here, the facts giving rise to the alleged discovery violation are not in dispute, we are presented with an issue of law, which we review *de novo*. *Hood*, 213 Ill. 2d at 256.

In *Tzystuck v. Chicago Transit Authority*, 124 Ill. 2d 226 (1988), the supreme court, in interpreting then-existing Supreme Court Rule 220 (107 Ill. 2d R. 220) (governing testimony of expert witnesses in civil proceedings at the trial court level), cogently explained the distinction between an "expert" and a "treating physician" as follows:

"Although the defendants argue that 'retained' in Rules 220(b)(1) and (c) refers broadly to witnesses who are 'requested' to give an opinion within their field of expertise, we consider it obliges litigants to disclose the identity and opinions only of those witnesses who are engaged for the purpose of giving an expert opinion at trial. It may be said that the connection between a medical expert who is 'retained to render an opinion at trial' and the party to the suit may be litigation-related, rather than treatment-related. Treating physicians, on the other hand, typically are not 'retained to render an opinion at trial' but are consulted, whether or not litigation is pending or contemplated, to treat a patient's physical or mental problem. While treating physicians may give opinions at trial, those opinions are developed in the course of treating the patient and are completely apart from any litigation. Such an opinion is not formed in anticipation of a trial, but is simply the product of a physician's observations while treating the patient, which coincidentally may have value as evidence at a trial. In this respect, the opinions of treating physicians are similar to those of occurrence witnesses who testify, not because they were retained in the expectation they might develop and give a particular opinion on a disputed issue at trial, but because they witnessed or participated in the transactions or events that are part of the subject matter of the litigation." *Tzystuck*, 124 Ill. 2d at 234-35.

As *Tzystuck* teaches, a treating physician is similar to an occurrence witness, in that, unlike an expert retained by a litigant, he is not controlled by a single party. Thus, the opposing party is not likely to be surprised by the treating physician's testimony. *Cochran v. Great Atlantic & Pacific Tea Co.*, 203 Ill. App. 3d 935, 940-41 (1990). Whether a doctor is a treating physician or an expert depends on the doctor's

relationship to the case, not on the substance of his testimony. *Cochran*, 203 Ill. App. 3d at 940. In this regard, a treating physician is one consulted for treatment whereas an expert is one consulted to render an opinion at trial. *Cochran*, 203 Ill. App. 3d at 941; see also *Tzystuck*, 124 Ill. 2d at 234. Although, as defendant points out, the *Tzystuck* and *Cochran* cases interpret the civil discovery rules, we see no reason why the principles discussed in those cases should not apply to the criminal discovery rule at issue here, especially given the fact that the purposes of both sets of discovery rules are similar. Compare *Hood*, 213 Ill. 2d at 258 (noting that the purpose of the criminal discovery rules is to protect the accused against surprise, unfairness, and inadequate preparation), with *Biehler v. White Metal Rolling & Stamping Corp.*, 30 Ill. App. 3d 435, 441-42 (1975) (noting that the purpose of the civil discovery rules is to enable attorneys to better prepare and evaluate their cases), and *Pink v. Dempsey*, 350 Ill. App. 405, 411 (1953) (noting that pretrial discovery is designed to permit exploration and avoid surprise).

Indeed, we recently relied on the foregoing passage from *Tzystuck* to address an issue similar to the one raised in the present case. In *People v. Cortez*, 361 Ill. App. 3d 456 (2005), the defendant was convicted of driving with a blood-alcohol concentration of 0.08 or greater (625 ILCS 5/11—501(a)(1) (West 2002)). On appeal, the defendant argued that the trial court erred in allowing a physician, who was not disclosed as an expert witness pursuant to Rule 412, to testify as to the effect of the use of an alcohol swab and the administration of a saline solution on the results of the defendant's blood test. Citing *Tzystuck*, we rejected the defendant's claim, holding that, although the physician's testimony technically constituted an "opinion," it was not rendered in anticipation of litigation. *Cortez*, 361 Ill. App. 3d at 465-66. Rather, the opinion was "simply the product of [the physician's] observations while treating [the] defendant." *Cortez*, 361 Ill. App. 3d at 466. We also rejected the defendant's claim as a practical matter, reasoning that were we to adopt his position, all treating physicians would be required to testify as experts. *Cortez*, 361 Ill. App. 3d at 466.

Turning to the facts of this case, we find that the State fulfilled its disclosure requirements under Rule 412. Although Dr. Steffen did provide an "opinion" regarding Scott's diagnostic films, he, like the physician in *Cortez*, was not retained to render an opinion at trial. Rather, as the radiologist on call at the hospital when Scott's diagnostic films were ready to be interpreted, Dr. Steffen was consulted for treatment of a medical problem. Accordingly, he did not testify as an "expert" within the meaning of Rule 412(a)(iv) (188 Ill. 2d R.

412(a)(iv)), but as a treating physician. See *Cochran*, 203 Ill. App. 3d at 940 (qualifying a radiologist as a treating physician). Because Dr. Steffen is considered a treating physician, the State was required to comply only with subsection (a)(i) of Rule 412 (188 Ill. 2d R. 412(a)(i)), which does not require it to submit a statement of qualifications to the opposing party. Defendant does not dispute that the State disclosed Dr. Steffen in accordance with Rule 412(a)(i). Moreover, the record indicates that the State tendered to defense counsel Scott's medical reports. Since defendant knew about Dr. Steffen's identity prior to trial and possessed Scott's medical reports, he could have undoubtedly discovered Dr. Steffen's opinion. See *Kim v. Evanston Hospital*, 240 Ill. App. 3d 881, 890 (1992) ("[A]n opposing party will not be surprised when a treating physician testifies, because the witness was initially associated with the issues in litigation for reasons other than the sole purpose of rendering an opinion at trial"); *People v. Smith*, 236 Ill. App. 3d 35, 42 (1992) (holding that because testifying doctor was a treating physician, his testimony should not have come as a surprise to the defendant). Accordingly, we conclude that no discovery violation occurred with respect to Dr. Steffen's testimony.

### III. CONCLUSION

For the reasons set forth above, we find no error in allowing Dr. Steffen to testify regarding the results of Scott's diagnostic films since he was Scott's treating radiologist, his identity was disclosed to the defense prior to defendant's trial, and the defense possessed Scott's medical reports. However, the trial court's failure to strictly comply with Supreme Court Rule 431(b) requires the reversal of defendant's conviction and a remand for a new trial. Although defendant does not challenge the sufficiency of the evidence in this appeal, we have reviewed the record and conclude that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. As a result, double jeopardy concerns are not implicated on remand. *People v. Lopez*, 229 Ill. 2d 322, 366-67 (2008); *People v. Garner*, 147 Ill. 2d 467, 483 (1992).

Reversed and remanded for a new trial.

JORGENSEN, J., concurs.

JUSTICE SCHOSTOK, concurring in part and dissenting in part:

I agree that no discovery violation occurred with respect to Dr. Steffen's testimony. However, because the majority's decision is inconsistent with our supreme court's recent decision in *People v. Glasper*, 234 Ill. 2d 173 (2009), I must respectfully dissent from that

portion of the decision reversing the defendant's conviction and remanding the matter for a new trial.

In *Glasper*, our supreme court determined that the trial court's failure to comply with Rule 431(b)(4) did not necessarily deprive the defendant of a fair trial, as such an error was subject to harmless error analysis. *Glasper*, 234 Ill. 2d at 200. In so ruling, the supreme court explained that its holding was limited to the version of the rule that was in effect at the time and would not necessarily apply to subsequent versions of the rule (such as the version of the rule at issue in this case). *Glasper*, 234 Ill. 2d at 200-01. The supreme court's analysis in reaching this determination, however, strongly suggested that it would reach the same conclusion if confronted with the facts in this case.

In its analysis, the supreme court first revisited its decision in *People v. Zehr*, 103 Ill. 2d 472 (1984). *Zehr* is the basis for Rule 431. See *Glasper*, 234 Ill. 2d at 187. The supreme court explained that *Zehr* did not address whether the error at issue in that case was subject to harmless-error analysis, because none of the parties had raised the issue. *Glasper*, 234 Ill. 2d at 190. The supreme court further explained that in *People v. Emerson*, 122 Ill. 2d 411 (1987), it had "moved away from the portion of the *Zehr* holding which stated that the relevant questions should be covered 'in the course of interrogation on *voir dire*,' and that failure to ask these questions amounts to 'prejudicial error.' " *Glasper*, 234 Ill. 2d at 197, quoting *Zehr*, 103 Ill. 2d at 477.

The supreme court additionally reviewed its recent decision in *People v. Smith*, 233 Ill. 2d 1 (2009). In that case, the supreme court declined to conduct a harmless-error review, because the error at issue involved a basic fundamental protection guaranteed by the sixth amendment to the federal constitution—the right to have a jury, rather than a judge, determine an accused's guilt. *Smith*, 233 Ill. 2d at 24-25. The supreme court found that *Smith* was not comparable to *Glasper*, because the trial court's failure to comply with Rule 431(b)(4) did not impinge upon any fundamental rights or constitutional protections; rather, the error involved a right made available only by rule of court. *Glasper*, 234 Ill. 2d at 193. The supreme court further expounded that a violation of a rule mandates reversal "only in a 'very limited class of cases' " and that such a violation would be more commonly subject to a harmless error analysis. *Glasper*, 234 Ill. 2d at 198, quoting *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 46, 119 S. Ct. 1827, 1833 (1999).

Applying the supreme court's analysis in *Glasper* to the instant case, it logically follows that the trial court's failure to comply with Rule 431 does not mandate automatic reversal. Rather, this court

must look to whether the defendant was prejudiced. Since the defendant did not raise the issue in a timely fashion, he is entitled to relief only if this court concludes that the trial court's error constituted plain error. As the majority sets forth, this court will consider a forfeited error under the plain-error rule only when (1) the evidence "is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" or (2) "the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Pursuant to *Glasper*, the error at issue herein was not so serious that it deprived the defendant of a fair trial. See *Glasper*, 234 Ill. 2d at 192. Thus, the defendant is entitled to relief in this case only if the evidence was closely balanced. That, it was not. The defendant was convicted of aggravated domestic battery. The victim claimed that the defendant attacked her. The defendant acknowledged that he hit the victim. Because the evidence was not closely balanced, the defendant is not entitled to any relief in this court on his contention of error.

In support of its decision, the majority analyzes and cites numerous cases that would suggest that the trial court's failure to comply with Rule 431 in this case mandates reversal. However, all of these cases, other than *People v. Graham*, 393 Ill. App. 3d 268 (2009), predate *Glasper*. It is this court's obligation to follow our supreme court's most recent pronouncement on an issue. See *People v. Romero*, 387 Ill. App. 3d 954, 968 (2008). That pronouncement is that reversal is not necessarily required unless there is a demonstration that the defendant was prejudiced. As for *Graham*, it is not compelling authority, because, in seeking to distinguish *Glasper*, the *Graham* court failed to address the analysis that the supreme court used in reaching its decision that a violation of Rule 431(b)(4) did not warrant automatic reversal. See *Graham*, 393 Ill. App. 3d at 276.

Finally, I note that the majority's opinion is entirely consistent with the dissent in *Glasper*. As an intermediate court of review, this court must follow the majority opinion of our state's supreme court rather than the dissent. See *People v. Kolton*, 347 Ill. App. 3d 142, 155 (2004) (Theis, J., dissenting).

For the foregoing reasons, I would affirm the defendant's conviction.